# EXHIBIT B

EXHIBIT B IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S ADMINSTRATIVE MOTION TO CONSIDER WHETER CASES SHOULD BE RELATED

# EXHIBIT A

to Complaint
in
U.S. Right to Know v. National Institutes of Health



**U.S. RIGHT TO KNOW**
*Pursuing truth and transparency for public health*

July 6, 2023

Marianne Manheim
National Library of Medicine
Room 6054
6705 Rockledge Dr.
Bethesda, MD 20817

Via email: nhlbifoiarequest@nhlbi.nih.gov

**RE: Freedom of Information Act request**


Dear Ms. Manheim:

This is a three-part request under the Freedom of Information Act, 5 U.S.C. § 552, et seq., to the National Institute of Allergy and Infectious Diseases (NIAID) within the National Institutes of Health (NIH).

We request the production of documents pertaining to the following NIAID/NIH employee:

- Dr. David Morens - Senior Advisor to the Director, NIAID

In a September 2021 email obtained by investigators of the U. S. House Select Subcommittee on the Coronavirus Pandemic[1][2], Dr. Morens instructed proponents of the natural origin theory of COVID-19 emergence to send correspondence to his personal Gmail address(es) to avoid public scrutiny through FOIA requests. He wrote, "As you know, I always try to communicate on gmail because my NIH email is FOIA'd constantly."

The purpose of the FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). The FOIA is designed to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976).

It is clear from the September 2021 email that Dr. Morens used personal communication channels to avoid transparency for official communications. Therefore, we request a complete

---

[1] https://oversight.house.gov/wp-content/uploads/2023/06/2023.06.29-BRW-Letter-to-DM-Re.-Origins_Redacted_Final.pdf

[2] https://theintercept.com/2023/06/29/covid-nih-personal-email-foia/

**USRTK.ORG** | 4096 Piedmont Avenue, Suite 963; Oakland, CA 94611-5221

and thorough search of Dr. Morens's personal communications channels for official NIH business. These include, but are not limited to:

- Dr. Morens's personal Gmail address(es)
    - Please search all mailbox folders, including "Trash".
- Slack
- Signal
- Whatsapp
- SMS messages

**Part I.** We seek all communications (including CC and BCC, and their attachments) – between Mr. Morens and the individuals named below, excluding those containing the keywords "vaccine" or "vaccines":

1. **Anthony Fauci**, Former Director of NIAID
2. **Francis Collins**, Former Director of NIH

Please produce documents in order of the list above. The time period covered by Part I of this request is from January 1, 2020 to present.

**Part II.** We seek all communications (including CC and BCC, and their attachments) – between Mr. Morens and the individuals named below:

1. **Peter Daszak** or daszak@ecohealthalliance.org
2. **Kristian Andersen** or andersen@scripps.edu or KGA1978@gmail.com
3. **Ralph Baric** or rbaric@email.unc.edu or rsbaric@gmail.com
4. **Jeremy Farrar** or j.farrar@wellcome.ac.uk
5. **James Le Duc** or jwleduc@utmb.edu
6. **George Gao** or gaof@im.ac.cn
7. **Robert Garry** or rfgarry@tulane.edu
8. **Edward Holmes** or edward.holmes@sydney.edu.au
9. **Stephen Goldstein** or u6025689@gmail.com
10. **Zhengli Shi or Shi Zhengli** or zhengli.shi@virosin.org or zlshi@wh.iov.cn or 544728460@qq.com
11. **Dennis Carroll** or dcarroll@usaid.gov or dcarroll008@gmail.com
12. **Ron Fouchier** or r.fouchier@erasmusmc.nl
13. **Michael Worobey** or worobey@email.arizona.edu
14. **Ian Lipkin** or wil2001@columbia.edu
15. **Christian Drosten** or christian.drosten@charite.de
16. **Marion Koopmans** or m.koopmans@erasmusmc.nl
17. **Robert Kessler** or kessler@ecohealthalliance.org
18. **Angela Rasmussen** or angela.rasmussen@usask.ca
19. **Charles Calisher** or calisher@cybersafe.net

2

Please produce documents in order of the list above. The time period covered by Part II of this request is from January 1, 2020 to present.

**Part III.** We seek all communications (including CC and BCC, and their attachments) – between Mr. Morens and the individuals named below, containing any of the keywords listed below.

Individuals:

1. **Erik Stemmy**, Program Officer in the Respiratory Diseases Branch, Division of Microbiology and Infectious Diseases, NIH
2. **Hugh Auchincloss**, Acting Director, NIAID
3. **Lawrence Tabak**, Acting Director, NIH
4. **Alex Azar**, Former HHS Secretary
5. **David Hassell**, Deputy Assistant Secretary and Acting Director of the Office of Preparedness within the Administration for Strategic Preparedness and Response (ASPR), HHS
6. **Robert Kadlec**, Former Assistant Secretary for Preparedness and Response, HHS Office of the Secretary

Containing any of the following keywords or combination of keywords:

1. "SARS-CoV-2" AND "origin"
2. "SARS-CoV-2" AND "natural"
3. "COVID" AND "origin"
4. "COVID" AND "natural"
5. "Lab leak"
6. "EcoHealth"
7. "WIV"
8. "Wuhan Institute of Virology"
9. "Zoonotic"

Please produce documents in order of the list above. The time period covered by Part III of this request is from January 1, 2020 to present.

We request that you disclose these documents and materials as they become available to you, without waiting until all the documents have been assembled. If documents are denied in whole or in part, please specify which exemption(s) is (are) claimed for each passage or whole document denied. Give the number of pages in each document and the total number of pages pertaining to this request and the dates of documents withheld. We request that excised material be "blacked out" rather than "whited out" or cut out and that the remaining non-exempt portions of documents be released as provided under the Freedom of Information Act.

Please advise of any destruction of records and include the date of and authority for such

destruction. As we expect to appeal any denials, please specify the office and address to which an appeal should be directed.

## REQUEST FOR FEE WAIVER

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *NARA v. Favish*, 541 U.S. 157, 171 (2004) quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). FOIA's fee waiver requirement is "liberally construed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).

The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as U.S. Right to Know access to government records without the payment of fees. Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and *non-profit public interest groups*." *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D. Mass. 1984) (emphasis added). As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information ... ." 132 Cong. Rec. S. 14298 (statement of Senator Patrick Leahy).

### I. U.S. Right to Know Qualifies for a Fee Waiver.

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

Thus, the NIH must consider six factors to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns "the operations or activities of the Federal government," (2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) whether the disclosure "will contribute to public understanding" of a reasonably broad audience of persons interested in the subject, (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. *Id*. § 2.107(1)(2), (5) whether a commercial interest exists and its magnitude, and (6) the primary interest in disclosure. As shown below, U.S. Right to Know meets each of these factors.

**A. The Subject of This Request Concerns "The Operations and Activities of the Government."**

The subject matter of this request concerns the operations and activities of the NIH. This request is about the NIH's knowledge of the origins of the COVID-19 pandemic, including information that NIH staff may have deliberately withheld from the public.

This FOIA will provide U.S. Right to Know and the public with crucial insight into the activities of the NIH in relation to the US Government's efforts to understand the origins of the COVID-19 pandemic. It is clear that a federal agency's oversight of health, safety and security threats, both foreign and in the U.S. is a specific and identifiable activity of the government, and in this case it is the executive branch agency of the NIH. *Judicial Watch*, 326 F.3d at 1313 ("[R]easonable specificity is all that FOIA requires with regard to this factor") (internal quotations omitted). Thus, U.S. Right to Know meets this factor.

**B. Disclosure is "Likely to Contribute" to an Understanding of Government Operations or Activities.**

The requested records are meaningfully informative about government operations or activities and will contribute to an increased understanding of those operations and activities by the public.

Disclosure of the requested records will allow U.S. Right to Know to convey to the public information about the NIH's activities in relation to the origins of COVID-19. Once the information is made available, U.S. Right to Know will analyze it and present it to the general public in a manner that will meaningfully enhance the public's understanding of this topic.

Thus, the requested records are likely to contribute to an understanding of the NIH's operations and activities.

**C. Disclosure of the Requested Records Will Contribute to a Reasonably Broad Audience of Interested Persons' Understanding of the origins of the COVID-19 Pandemic**

The requested records will contribute to public understanding of whether the NIH's actions concerning COVID-19 were consistent with its mission and purpose to "to exemplify and promote the highest level of scientific integrity, public accountability, and social responsibility in the conduct of science." As explained above, the records will contribute to public understanding of this topic.

Activities of the NIH generally, and specifically its activities to investigate the origins of life-threatening infectious disease outbreaks are areas of interest to a reasonably broad segment of the public. U.S. Right to Know will use the information it obtains from the disclosed records to

5

educate the public at large about this topic. *See W. Watersheds Proj. v. Brown*, 318 F. Supp.2d 1036, 1040 (D. Idaho 2004) (finding that "WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and also how ... management strategies employed by the BLM may adversely affect the environment").

Through U.S. Right to Know's synthesis and dissemination (by means discussed in Section II, below), disclosure of information contained in and gleaned from the requested records will contribute to a broad audience of persons who are interested in the subject matter. *Ettlinger v. FBI*, 596 F. Supp. at 876 (benefit to a population group of some size distinct from the requester alone is sufficient); *Carney v. Dept. of Justice*, 19 F.3d 807, 815 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) (applying "public" to require a sufficient "breadth of benefit" beyond the requester's own interests); *Cmty. Legal Servs. v. Dep't of Hous. & Urban Dev.*, 405 F. Supp.2d 553, 557 (E.D. Pa. 2005) (in granting fee waiver to community legal group, court noted that while the requester's "work by its nature is unlikely to reach a very general audience," "there is a segment of the public that is interested in its work").

Indeed, the public does not currently have an ability to easily evaluate the requested records, which are not currently in the public domain. *See Cmty. Legal Servs.*, 405 F. Supp.2d at 560 (because requested records "clarify important facts" about agency policy, "the CLS request would likely shed light on information that is new to the interested public."). As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir. 1987), "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations... ."1[1]

Disclosure of these records is not only "likely to contribute," but is certain to contribute, to public understanding of NIH's activities toward finding the origins of the COVID-19 pandemic. The public is always well served when it knows how the government conducts its activities. Hence, there can be no dispute that disclosure of the requested records to the public will educate the public about this pressing issue.

## II. Disclosure is Likely to Contribute Significantly to Public Understanding of Government Operations or Activities.

U.S. Right to Know is not requesting these records merely for their intrinsic informational value. Disclosure of the requested records will significantly enhance the public's understanding of what the NIH knows about the origins of the COVID-19 pandemic, as compared to the level of public understanding that existed prior to the disclosure. The records are also certain to shed light on the NIH's compliance with its own mission and purpose. Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA. Thus, U.S. Right to Know meets this factor as well.

6

### III. Obtaining the Requested Records is of No Commercial Interest to U.S. Right to Know

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to U.S. Right to Know's role of educating the general public. Founded in 2014, U.S. Right to Know is a 501(c)(3) nonprofit public interest, public health organization (EIN: 46-5676616). U.S. Right to Know has no commercial interest and will realize no commercial benefit from the release of the requested records.

### IV. U.S. Right to Know's Primary Interest in Disclosure is the Public Interest.

As stated above, U.S. Right to Know has no commercial interest that would be furthered by disclosure. Although even if it did have an interest, the public interest would far outweigh any pecuniary interest[3].

U.S. Right to Know is a non-profit organization that informs, educates, and counsels the public regarding corporate wrongdoing and government failures that threaten the integrity of our food system, our environment and our health. U.S. Right to Know has been substantially involved in the activities of numerous government agencies for over eight years, and has consistently displayed its ability to disseminate information granted to it through FOIA.

In granting U.S. Right to Know's fee waivers, agencies have recognized: (1) that the information requested by U.S. Right to Know contributes significantly to the public's understanding of the government's operations or activities; (2) that the information enhances the public's understanding to a greater degree than currently exists; (3) that U.S. Right to Know possesses the expertise to explain the requested information to the public; (4) that U.S. Right to Know possesses the ability to disseminate the requested information to the general public; (5) and that the news media recognizes U.S. Right to Know as an established expert in the field of public health. U.S. Right to Know's track record of active participation in oversight of governmental activities and decision making, and its consistent contribution to the public's understanding of those activities as compared to the level of public understanding prior to disclosure are well established.

U.S. Right to Know intends to use the records requested here similarly. U.S. Right to Know's work appears frequently in news stories online and in print, radio and TV, including reporting in outlets such as *The New York Times* and *The Guardian*, as well as medical and public health journals such as the *BMJ*. Many media outlets have reported about the food and chemical industries using information obtained by U.S. Right to Know from federal agencies. In 2022, more than 725,000 people visited U.S. Right to Know's extensive website, and viewed pages more than one million times. U.S. Right to Know and its staff regularly tweet to a combined following of nearly 50,000 on Twitter, and more than 9,600 people follow U.S. Right to Know on

---

[3] In this connection, it is immaterial whether any portion of U.S. Right to Know's request may currently be in the public domain because U.S. Right to Know requests considerably more than any piece of information that may currently be available to other individuals. *See Judicial Watch*, 326 F.3d at 1315.

Facebook, U.S. Right to Know intends to use any or all of these media outlets to share with the public information obtained as a result of this request.

Public oversight and enhanced understanding of the NIH's duties is absolutely necessary. In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject. *Carney*, 19 F.3d 807. U.S. Right to Know need not show how it intends to distribute the information, because "[n]othing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity." *Judicial Watch*, 326 F.3d at 1314. It is sufficient for U.S. Right to Know to show how it distributes information to the public generally. *Id.*

Please send the documents electronically in PDF format to Hana Mensendiek at hana@usrtk.org. If you need additional information please write Hana at the email address above.

Thank you so much for your help in filling this request.

Sincerely,

Hana Mensendiek
Investigator

Gary Ruskin
Executive Director

8